UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TRUSTEES OF THE UNITED FOOD
AND COMMERCIAL WORKERS UNION     : 1:19-cv-15417-NLH-KMW
AND PARTICIPATING FOOD
INDUSTRY EMPLOYERS HEALTH AND    : **OPINION**
WEFARE FUND

        Plaintiff,

    v.

MT. LAUREL CENTER FOR
REHABILITATION AND HEALTH
CARE, subsidiary of CENTERS
HEALTH CARE

        Defendant.

APPEARANCES:

W. DANIEL FEEHAN
O'BRIEN BELLAND & BUSHINSKY, LLC
509 S. LENOLA ROAD
BUILDING 6
MOORESTOWN, NJ 08057

**HILLMAN, District Judge**

    Plaintiff, Trustees of the United Food and Commercial Workers Union and Participating Food Industry Employers Health and Welfare Fund, filed its complaint against Defendant, Mount Laurel Center for Rehabilitation and Healthcare, on July 16, 2019 for Defendant's alleged violations of the Collective Bargaining Agreement between Defendant and United Food and Commercial Workers Union Local 1360. On September 4, 2019,

Plaintiff requested that the Clerk enter default against Defendant.  The Clerk entered default on September 5, 2019.  Presently before the Court is Plaintiff's motion for default judgment.

For the reasons stated below, the Court will grant Plaintiff's motion for default judgment.

## BACKGROUND

Plaintiff alleges the following:[1] Defendant Mount Laurel Center for Rehabilitation and Healthcare ("Mt. Laurel") entered into a Collective Bargaining Agreement ("CBA") with United Food and Commercial Workers Union Local 1360.  This CBA requires that Mt. Laurel make certain contributions to the United Food and Commercial Workers Union and Participating Food Industry Employers Health & Welfare Fund ("the Fund").  Plaintiff alleges that it has standing to commence this action under Section 502(d)(1) of the Employee Retirement Income Security Act of 1974

---

[1] The Court summarizes the relevant facts from Plaintiff's complaint, its motion for default judgment, and the affidavits filed in support of its motion.  See Lurty v. 2001 Towing & Recovery, Inc., 2019 WL 3297473, at *6 (D.N.J. Kuly 23, 2019) (explaining that in order to prove a plaintiff's entitlement to default judgment, including damages, the plaintiff, and not simply counsel, must submit to the Court an affidavit to support her claims).  As explained below, on a motion for default judgment, every "well-pled allegation" of the complaint, except those relating to damages, are deemed admitted.  Comdyne I. Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

("ERISA"), 29 U.S.C. § 1332(d)(1) and Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185.

Plaintiff alleges that Mt. Laurel failed to remit or has remitted only a portion of its contributions for the benefits of its employees for a period of time including, but not limited to May 2016 through August 2017. Plaintiff also asserts that a payroll audit was conducted for the plan years 2016-2017, leading to the discovery of a Fringe Benefit delinquency. Plaintiff has demanded payment of these delinquencies on several occasions, but Mt. Laurel has failed to remit these contributions.

According to Plaintiff, Mt. Laurel's actions constitute violations of the Employee Retirement Income Security Act of 1974 ("ERISA"). Specifically, Plaintiff alleges that Defendant has violated Section 515 of ERISA, 29 U.S.C. § 1145, by failing to pay the delinquencies enumerated in Plaintiff's complaint. Plaintiff now seeks that Defendant pay (1) contributions due; (2) interest on the delinquent contributions as provided by Section 502(g) of ERISA; (3) liquidated damages in the amount of 20% as provided by Section 502(g) of ERISA; (4) specific performance of all obligations under the CBA; and (5) attorneys' fees. In total, Plaintiff seeks $305,614.76 in damages.

**DISCUSSION**

A. Subject Matter Jurisdiction

This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff has raised issues under ERISA the Labor Management Relations Act (LMRA).

B. Default

The first step in obtaining default judgment is the entry of default. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the Clerk must enter the party's default." Fed. R. Civ. P. 55(a). In this case, the Clerk entered default on September 5, 2019.

C. Default Judgment

"Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter default judgment against a properly served defendant who fails to file a timely responsible pleading. Chanel v. Gordashevsky, 558 F.Supp.2d 532, 535 (D.N.J. 2008) (citing Anchorage Assoc. v. Virgin Is. Bd. Of Tax. Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990)). However, a party seeking a default judgment is not entitled to such a judgment as a right. See Franklin v. Nat'l Maritime Union of America, 1991 U.S. Dist. LEXIS 9819, at *3-4 (D.N.J. 1991) (quoting 10 Wright, Miller & Kane, Federal Practice and Procedure § 2685 (1983)), aff'd, 972 F.2d 1331 (3d Cir. 1992). The decision to enter a default

judgment is instead "left primarily to the discretion of the district court." Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984).

When deciding whether to grant a default judgment, "all well-pleaded allegations in a complaint, except those relating to the amount of damages, are admitted as true following a default." Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1146 (3d Cir. 1990). However, the court must still determine "whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" Chanel, 558 F.Supp.2d at 535 (citing Directv, Inc. v. Asher, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)).

"Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000); United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984). If a review of the Complaint demonstrates a valid cause of action, the Court must then determine whether Plaintiff is entitled to default judgment.

D. Analysis

The Court will first address whether Defendant is liable to Plaintiff for contributions to the Fund and whether Plaintiff

has submitted sufficient information to justify the relief sought. The Court will then analyze whether the Chamberlin factors indicate that the Court should grant Plaintiff's motion for default judgment. Finally, the Court will determine the appropriate amount of damages.

    1. Whether Plaintiff has a Valid Action

Plaintiff alleges that Defendant failed to make certain contributions to the Plaintiff on behalf of Defendant's employees as required under the CBA and ERISA. Having reviewed the Plaintiff's submissions and authority, the Court finds that the Plaintiff's complaint alleges sufficient facts to support its claims under LMRA § 301, 29 U.S.C. § 185, and ERISA §§ 515 and 502(g)(2), 29 U.S.C. §§ 1145, 1132(g). Accordingly, entry of default judgment is proper as to Defendant's liability for failure to make contributions to the Fund and submit timely remittance reports under terms of the CBA.

Plaintiff alleges in the complaint that "[t]he Collective Bargaining Agreement in effect between Defendant Mt. Laurel and the United Food and Commercial Workers union Local 1360 requires that certain contributions be made to the Fund on behalf of the employees of Defendant Mt. Laurel." Compl., ECF No. 1, at ¶12. Plaintiff further alleges that Mt. Laurel "failed to remit and/or has only remitted a portion of the required contributions to the Fund for the benefit of its employees for the period of

time, including, but not limited to May 2016 through August 2017." Id. at ¶ 13. Plaintiff continues on to allege that "a payroll audit was conducted for the plan years 2016-2017 for the Health and Welfare Fund and Fringe Benefit delinquency was discovered." Id. at ¶ 14. As a result of this alleged failure to remit certain contributions, Plaintiff alleges that "the Fund has assessed interest and liquidated damages against Defendant Mt. Laurel under the terms of the Fund's Restatement agreement and Declaration of Trust and Policy and Procedure for the collection of Delinquent Contributions." Id. at ¶ 15. Plaintiff finally alleges that it has demanded payment of the delinquencies enumerated in its complaint "on several occasions and Defendant Mt. Laurel has failed to remit the required contributions." Id. at ¶ 16.

LMRA § 301, the original jurisdiction and substantive basis for suits to collect delinquent benefit fund contributions in federal court provides that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185. Because Plaintiff is an employee benefit trust fund and trustee, Plaintiff has standing to sue under 29 U.S.C.

§ 185(a).  Compl., ECF No. 1, at ¶ 8; <u>Schneider v. Moving & Storage Co. v. Robbins</u>, 466 U.S. 370, 370-71 (1984) (recognizing that employee benefit trustees are third-party beneficiaries of collective bargaining agreements).

Plaintiffs may also sue under ERISA §§ 515 and 502(g)(2), which provide a federal remedy to collect delinquent employer pension plan contributions 29 U.S.C. §§ 1145, 1132(g)(2).  Under ERISA § 515, an "employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of the plan or such agreement." 29 U.S.C. § 1145.  If an employer fails to make contributions to an employee benefit fund as required by the CBA and ERISA § 515, the employer is subject to ERISA § 502(g)(2).  This section is the civil enforcement provision of ERISA, providing for recovery of unpaid contributions, interest, liquidated damages, reasonably attorneys' fees and costs, and such other relief as the Court deems appropriate.  29 U.S.C. § 1132(g)(2).

As stated above, the Court finds that the Plaintiff's complaint alleges sufficient facts to support its claims under LMRA § 301, 29 U.S.C. § 185, and ERISA §§ 515 and 502(g)(2), 29 U.S.C. §§ 1145, 1132(g).  The monetary damages to which Plaintiff is entitled will be discussed below.

2. Whether Plaintiff is Entitled to a Default Judgment

    a. Prejudice to Plaintiff

Plaintiff will be prejudiced if default judgment is denied, as Plaintiff have not yet received the delinquent contributions that they are owed.

    b. Existence of Meritorious Defense

"A claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." <u>Poulis v. State Farm Fire & Cas. Co.</u>, 747 F.2d 863, 869-70 (3d Cir. 1984).  Here, the Court cannot consider Defendant's defenses because Defendant has failed to respond to this action.  See <u>Prudential Ins. Co. of America v. Taylor</u>, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009) ("[B]ecause [Defendant] has not answered or otherwise appeared in this action, the Court was unable to ascertain whether she had any litigable defense."); see also <u>Santiago v. Lucky Lodi Buffet Inc.</u>, No. 18-06302, 2016 WL 6138248, at *3 (D.N.J. Oct. 21, 2016).

Defendant does not appear to have a litigable defense, at least on the papers that Plaintiff submitted.  Given that Plaintiff's allegations are accepted as true at this stage and that Plaintiff's allegations establish Defendant's liability, there does not appear to be a litigable defense.

          c. Whether Defendant's Delay is the Result of Culpable Conduct

The Third Circuit has explained that "culpable conduct" is conduct that is "taken willfully or in bad faith." <u>Gross v. Stereo Component Sys., Inc.</u>, 700 F.2d 120, 123-24 (3d Cir. 1983). Plaintiff has not provided any record evidence that Defendant's actions were in bad faith. However, Defendant's failure to respond to the complaint was willful in the sense that Defendant accepted service of the complaint and has not participated in this action in any way. See, e.g., <u>Santiago</u>, 2016 WL 6138248, at *3 (finding that "Defendants acted culpably as they have been served with the Complaint and Defendants are not infants, otherwise incompetent, or presently engaged in military service").

Consequently, because the Court has found that Plaintiff will be prejudiced if default judgment is not granted; Defendant does not have a meritorious defense; and Defendant's failure to respond in this case is the result of its culpable misconduct, the Court will enter judgment in Plaintiff's favor on its ERISA and LMRA claims.

    3. Damages

In support of its motion, Plaintiff has submitted an affidavit by their attorney explaining the calculation of Defendant's liability as $305,614.76. See Affidavit in Support

of Motion for Default Judgment, ECF No. 6-1.  The Court accepts this amount as adequately supported by Plaintiff's counsel's certification, and unchallenged by Defendant.

Pursuant to Section 1132(g) of ERISA, Plaintiffs are entitled to (1) the full amount of unpaid contributions; (2) interest on the unpaid contributions; (3) the greater of the interest on the unpaid contributions or liquidated damages provided for under the plan in an amount not in excess of 20 percent; (4) reasonable attorneys' fees and costs of the action, and (5) other such legal or equitable relief as the Court deems appropriate.  29 U.S.C. § 1132(g)(2).  Section 1132(g) also provides that interest on unpaid contributions shall be determined by using the rate specified by the plan, or, if none, the rate prescribed by the IRS.  Id.

(1)  Unpaid Contributions

Here, the unpaid contributions for both the Plaintiff fun between May 2016 and August 2017 and the payroll audit for plan years 2016-2017 equal $83,141.63.  In addition to these payments, the payroll compliance review for years 2016-2017 resulted in an additional $116,166.24 in unpaid contributions.

In total, the unpaid contributions amount to $119,307.87.

(2)  Interest

The Policy and Procedure for Collection of Delinquent Contribution and Payroll Audits provides that interest accrues

at the rate of 2% above prime.  Plaintiff calculated this would be $30,786.11 for Defendant's failure to remit contributions between May 2016 and August 2017.  Plaintiff calculated interest for the payroll audit for plan years 2016-2017 as $15,828.70.

In total, the interest amounts to $46,614.81.

(3)  Liquidated Damages

Regarding liquidated damages, the Policy and Procedure for Collection of Delinquent Contribution and Payroll Audits provides that if a delinquent contribution is not paid, the Trustees will assess liquidated damages in the amount equal to 20% of the contribution.  As the liquidated damages amount is greater than the interest due, pursuant to Section 1132(g)(2)(C), liquidated damages are awarded in addition to interest.

Thus, the liquidated damages for the unpaid contributions between May 2016 and August 2017 is $32,559.43.  The liquidated damages for the payroll compliance review are $23,233.25.

In total, the liquidated damages amount to $55,792.68.

(4)  Attorneys' Fees and Costs

Under Section 1132(g), Plaintiff is entitled to reasonable attorneys' fees and costs.  29 U.S.C. § 1132(g)(2)(D). Plaintiff asserts that its attorneys' fees and costs total $3,330.00 (consisting of $2,795.00 in attorneys' fees and $535.00 in costs).  Plaintiff based its calculation on a rate of

$150.00-160.00 per hour for attorneys and $70.00 for paralegals, which the Court finds reasonable in light of the prevailing market rates in the community.  See Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  The Court also finds that the number of hours billed is reasonable in light of the work required in this case.  Plaintiff has also shown that it incurred audit costs of $555.00.  Therefore, under the lodestar approach, the attorneys' fees and costs are reasonable.  See Hahnemann Univ. Hosp. v. All Shore Inc., 514 F.3d 300, 310 (3d Cir. 2008).

In total, attorneys' fees and costs amount to $3,885.00.

Adding together the sums for unpaid contributions, interest, liquidated damages, and attorneys' fees and costs, Plaintiff's damages total $305,600.36.[2]

## CONCLUSION

For the reasons stated above, the Court will grant Plaintiff's motion for entry of judgment by default.  The Court will enter judgment for Plaintiff against Defendant in the amount of $305,600.36.  An appropriate order will follow.

Date: May 1, 2020          s/ Noel L. Hillman
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.

---

[2] The Court calculated the damages to be is $14.40 less than the damages requested by Plaintiff in its motion for default judgment.  The difference seems to stem from a mistake in arithmetic.